**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>Melissa Arletta Hogan,<br><br>Debtor(s). | C/A No. 18-05693-HB<br><br>Chapter 13<br><br>**ORDER** |

**THIS MATTER** is before the Court for consideration of the United States Trustee's ("UST") Motion[1] and the response thereto of Deighan Law LLC, f/k/a Law Solutions Chicago, and doing business in South Carolina as UpRight Law ("UpRight").[2] This is an ongoing discovery dispute concerning the UST's *Motion for Review of the Conduct of Deighan Law, LLC, Disallowance and Disgorgement of Fees, and Other Appropriate Relief*.[3] The UST previously filed a Motion to Compel[4] concerning, in relevant part, Interrogatories 14, 16, and 17. The Court ruled on the Motion to Compel[5] and UpRight filed a Motion to Reconsider,[6] to which the UST objected. UpRight argued, in part, any response would require it to disclose the identity of its clients or former clients contrary to protections of the attorney-client privilege. The Court imposed a phased process that allowed UpRight to respond to the discovery requests by listing certain clients and former clients by numerical identifiers or some other reasonable method without revealing the individuals' identities. The Order also allowed the UST to reassert its demand for identifying information, which it did, requesting the names of the clients. UpRight objects, again asserting the attorney-client privilege and other arguments previously

---

[1] ECF No. 164, filed Apr. 20, 2020.
[2] ECF No. 170, filed May 8, 2020.
[3] ECF No. 67, filed Jul. 17, 2019,
[4] ECF No. 113, filed Nov. 25, 2019.
[5] ECF No. 129, entered Jan. 15, 2020.
[6] ECF No. 132, filed Jan. 27, 2020.

addressed in prior rulings, which remain in full force and effect.  The Court will revisit <u>only</u> the issue of application of the attorney-client privilege to the requested client names.

The attorney-client privilege serves to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 682, 66 L.Ed.2d 584 (1981).  Because the attorney-client privilege interferes with the full and free discovery of the truth, it "is to be narrowly construed . . . and recognized 'only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998) (quoting *Trammel v. United States*, 445 U.S. 40, 50, 100 S. Ct. 906, 63 L.Ed.2d 186 (1980)).  The scope of the privilege is limited to "the giving of professional advice to those who can act on it" and "the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 390.  Thus, the client's communication must not only be confidential but it must be "to an attorney made in order to obtain legal assistance[.]" *In re Grand Jury Subpoena*, 204 F.3d 516, 520 (4th Cir. 2000) (quoting *Fisher v. United States*, 425 U.S. 391, 403, 96 S. Ct. 1569, 48 L.Ed.2d 39 (1976)).

In the Fourth Circuit, the attorney-client privilege applies only if:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

2

*In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 339 n.3 (4th Cir. 2005) (citing *United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir. 1982)). "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability.'" *Id.* (quoting *Hawkins*, 148 F.3d at 383); *see also NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 501-02 (4th Cir. 2011) (holding that the party claiming privilege bears the burden of showing that the communication was "for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding").

"The identity of a client, the amount of the fee, the identification of payment by case file name, and the general purpose of work performed are not protected from disclosure by the attorney-client privilege . . . because such information ordinarily reveals no confidential professional communications between attorney and client." *Grand Jury Subpoena*, 204 F.3d at 520 (quotation marks and citations omitted). However, the Fourth Circuit has articulated a "narrow exception" to this rule "that protects a client's identity when the client has not authorized the disclosure of confidential information or of a confidential communication, and the compelled disclosure of his identity is tantamount to revealing his confidences." *Id.* at 522. "[I]f a client communicates information to his attorney with the understanding that the information will be revealed to others, that information as well as 'the details underlying the data which was to be published' will not enjoy the privilege." *United States v. (Under Seal)*, 748 F.2d 871, 875 (4th Cir. 1984) (citations omitted).

In the bankruptcy context, the attorney-client privilege has its limitations, and does not apply to information disclosed for the purpose of filing a bankruptcy petition or assembling the supporting schedules. Courts reason the information is not privileged

3

material because it is intended to ultimately be publicly disclosed. *See United States v. White*, 944 F. Supp. 2d 454, 458 (D.S.C. 2013) (concluding that the attorney-client privilege did not apply in a criminal matter where the government was seeking information from the individual's bankruptcy attorney regarding the formulation of the bankruptcy schedules that were subsequently publicly filed); *United States v. White*, 950 F.2d 426, 429 (7th Cir. 1991) ("When information is disclosed for the purpose of assembly into a bankruptcy petition and supporting schedules, there is no intent for the information to be held in confidence because the information is to be disclosed on documents publicly filed with the bankruptcy court."); *United States v. Naegele,* 468 F. Supp.2d 165, 169-70 (D.D.C. 2007) (information and communications imparted from client to his attorney for purpose of their disclosure in bankruptcy filing are not privileged because it is intended to be disclosed in the filing and, therefore, by definition is not information provided to the attorney in confidence).

South Carolina Rule of Professional Conduct 1.6 states, in pertinent part, "[a] lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation . . ." Rule 1.6(a), RPC, Rule 407, SCACR.  It further provides that a "lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary . . . to respond to allegations in any proceeding concerning the lawyer's representation of the client." *Id.* at Rule 1.6(b)(6).

Clearly, information provided to bankruptcy counsel such as names and financial details must ultimately be disclosed if an individual follows through to a public filing. The record here also shows that after executing a retainer agreement and prior to the filing

of any bankruptcy petition, Upright's services included and anticipated disclosure of a client's name and Upright's bankruptcy representation before any public filing.[7]  If an individual employs a bankruptcy firm such as Upright, and part of the service anticipated or provided is verification of representation to creditors or third parties, then the attorney-client privilege will not protect disclosure of the individual's name or retention of the bankruptcy firm.  Any such individual impliedly (if not expressly) authorized disclosure of that information to a third party when contracting for such service, regardless of whether the bankruptcy was ultimately filed.  Further, Rule 1.6 of the South Carolina Rules of Professional Conduct does not prohibit disclosure of these identities here, where allegations concerning UpRight's representation of such clients have been raised. Rule 1.6(b)(6), RPC, Rule 407, SCACR.

      **IT IS, THEREFORE, ORDERED** that the UST's Motion is granted and on or before **June 1, 2020**, UpRight shall replace the numerical identifiers or other identifying information previously utilized in response to the UST's discovery requests with the full names of the matching individuals.

**FILED BY THE COURT**
**05/19/2020**



                                              Chief US Bankruptcy Judge
                                              District of South Carolina

Entered: 05/19/2020

---

[7] *See* ECF No. 51-2 at ¶ 18 (stating that on "June 5, 2017 . . . [Ms. Hogan] contacted UpRight Law for the limited purpose of asking for the telephone number to give to her creditors for verification of representation. UpRight Law provided her with that information over the phone and sent it to her via email so she would have it written down."); *id.* at ¶ 19 ("On June 29, 2017, UpRight Law received and responded to a request to verify its representation of Ms. Hogan that was initiated by Founder's Federal Credit Union."); ECF No. 77 at 15 ("UpRight Law admits that June 5, 2017 was the date that Ms. Hogan contacted UpRight Law to refresh her recollection of the telephone number used for creditor verifications of representations . . .").